ROBERT CAIRNS, EXR. v. HENRY C. HEDGES ET AL.

1. REPORT OF MASTER COMMISSIONER IS NOT VACATED BY APPEAL.

When an action has been referred to a master commissioner, by the court of common pleas, under sec. 5222, Rev. Stat., and a report filed in said court, such report is not vacated by appeal, but may be excepted to in the appellate court, and confirmed, modified or set aside as in the court below.

2. NEGLECT OF EXECUTOR TO FILE AN ACCOUNT

An executor, who refused to obey the order of the court to file an account, although served with five citations, should not receive an allowance for extra services.

APPEAL from the Court of Common Pleas of Richland county.

On the 14th of August, 1840, Joseph Cairns made his will, and on June 25, 1845, added a codicil to it. He died in June, 1865, leaving an estate amounting to about $18,000. The principle part of it consisted of real estate in Mansfield and a farm a few miles distant. He left as a legacy to a grand-daughter, by the codicil, the interest on $1,000, during her life. The residue of his estate, after the payment of debts and funeral expenses, he bequeathed, in equal shares, to his son Robert and his daughter Harriet McLaughlin. After the death of the testator, a woman residing in the state of Pennsylvania claimed to be the widow of the testator, and commenced proceeding for dower and a distributive share of the estate. There seemed to be no legal defense to her claim. The claim of the widow was settled by the executor for $1,000 and the attorney fees, which were $200 more.

Robert Cairns, immediately after the death of his father, qualified as executor of his will, and has ever since acted as such.

The appraised value of all the assets was $16,489.86. The proceeds of the real estate exceeded the appraised value by $2,175.

The quarter section of land, near the city of Mansfield, was appraised at $4,800, and it was specifically devised to Robert, which together with an amount of the proceeds arising from other assets, sufficient to make him equal with his sister, he took absolutely, while the will only gave to the sister the interest on her share during her life.

In 1865, Mrs. McLaughlin became dissatisfied with her brother's management of the trust estate, and at her request, securities aggregating over $8,000, belonging to the estate, were placed in the hands of H. C. Hedges by the executor. Mr. Hedges was the attorney of Mrs. McLaughlin, and received these securities as such attorney. They were kept in an envelope in a safe in Mr. Hedges' office, to which the plaintiff had access.

Up to the commencement of this suit, the plaintiff paid his sister interest on said securities to the amount of $2,193.50; she collected interest herself to the amount of $923.00, and H. C. Hedges paid her $4,052.50. Total $7,169.

In the inventory, made in 1857, the plaintiff charges himself with a balance on the Aldfelt mill property, $1,215.24.

An action was brought by plaintiff in the court of common pleas of Richland county, against H. C. Hedges, Harriet McLaughlin and others, to recover assets alleged to be in the hands of said Hedges, and for an account. Hedges answered admitting the receipt of the securities, as alleged by plaintiff, stating what had been paid to Mrs. McLaughlin as interest, and that all the securities had been turned over to plaintiff since suit was commenced. The averments of the answer of Hedges were admitted by plaintiff; and Mrs. McLaughlin, by answer and cross-petition, claimed a large balance due her from plaintiff and Hedges.

The case was referred to a special Master Commissioner by the court of common pleas, to take the testimony and state an account between the various parties, and report the evidence and his findings to said court. The report was duly filed, and exceptions were taken to it by the defendant, Harriet McLaughlin. The exceptions were overruled, and the report of the Master confirmed, and judgment was rendered in accordance with the findings of the Master. From this judgment the defendant, Harriet McLaughlin, appealed.

JENNER, J.

One of the questions presented is as to the testimony upon which this cause is to be heard and determined in this court. Is it for hearing upon exceptions to the Master's report, or for trial as if no such report had been filed in the common pleas court?

Counsel on behalf of defendant, Harriet McLaughlin, urge the latter view as the correct practice, and cite sec. 5225, Rev. Stat., as to the manner in which the trial should be conducted on appeal; also, the case of Bell v. Crawford, 25 O. S., 402.

Since the revision, there is a well defined distinction between the duties of a Referee and a Master Commissioner under our statute. All or any of the issues of fact or of law, or both, by consent of parties, may be tried before a Referee. Section 5210, and sec. 5211, Rev. Stat., provides, that without the consent of parties, in a case in which a trial by jury is not a constitutional right, the court, or a judge in vacation, may direct a reference. The report of the Referee upon the whole issue stands as the decision of the court; but when the order of reference only provides for a report of the facts, then the report has the effect of a special verdict. The Referee only states the facts found by him, and his conclusions of law, and does not reduce the testimony to writing unless directed to do so by the court, sec. 5213, Rev. Stat.

When a reference is made under sec. 5211, in a case in which the parties are not entitled to a trial by jury, and the order does not require the Referee to reduce the testimony to writing, and the witnesses to subscribe the same, the appeal vacates the report as well as the judgment, and the case stands in the appellate court as though no reference had been made. The report is a mere finding of facts and conclusions of law, without the testimony to enable the reviewing court to determine whether the findings were correct or not.

But when an action is referred to a Master Commissioner, he must reduce all the testimony to writing, and report the same to the court, with his conclu-

sions on the law, and the facts involved in the issue.   The report so made ''may be excepted to by the parties, and confirmed, modified or set aside by the court.'' Sec. 5222, Rev. Stat.

All the testimony that was before the Master, and presumably, all the evidence within the control of the parties, is in writing, so that a reviewing court may examine and determine as to whether the findings of fact are in accordance with the evidence.

When Chief Justice McIlvaine announced the opinion in Bell v. Crawford, 25 O. S., 402, the rules of practice in sending causes to a Referee or Master for trial, were governed by the supplemental act of April 13, 1867 (S. & S., 579) and sec. 611 of the Code as amended March 30, 1868.   The Chief Justice says, on page 411, ''The act of 1867 was not expressly repealed or modified by this amendment, and it is therefore in full force, except in so far as both statutes cannot operate.''

It is provided in the statutes of 1867, that the testimony taken and reduced to writing by the Referee or Master, and signed by the witnesses, ''shall have the force and effect of depositions regularly taken in the cause, and may be used as such at any subsequent state of the cause, either upon a new trial, second trial, or appeal;'' * * * And then the concluding clause: ''but nothing in this act shall be so construed as to prohibit any party from recalling any witness who may have testified, or from taking additional testimony.''

With this state of the law, it would seem to have been the clear intention of the general assembly to vacate the report of a Referee or Master made under these acts.   And this is the holding of our supreme court in Bell v. Crawford, *supra*, that the findings and report of the Master as to the main issues were vacated, and the cause stood in the appellate court for trial upon the same issues. But as to mere ancillary or auxiliary reports, the usage of equity courts was not affected by the statute, and the report as to such matters should be confirmed, modified, or set aside upon the testimony reported by the Master, unless upon equitable showing the parties are permitted to introduce additional testimony.

But since the decision of Bell v. Crawford, *supra*, the clause permitting additional testimony to be introduced on appeal, has been repealed.   And while, no doubt, upon a proper showing, a court of equity would have the power to permit additional testimony to be given in the appellate court, we are of the opinion that the appeal did not vacate the report made by the Master, but that the report is brought up by the appeal, and ''may be excepted to by the parties, and confirmed, modified, or set aside by the court.''

This accords with the construction given to this section of the statute by the circuit court of Franklin county, in a carefully considered opinion, delivered by Judge Clark in Brooks v. Scobie, *ante*, 194.

In the court below, numerous  exceptions were filed to the report of the Master by the defendant, Harriet McLaughlin, four of which are insisted upon here.

1.   It is claimed the Master did not construe the will according to the intention of the testator.

The will provides for the payment of debts and funeral expenses, and that the residue of the estate be divided into two shares, one of which the testator gives to his son Robert absolutely.   In the share of Robert is included a farm near Mansfield.   It is provided that the farm be appraised by three appraisers, appointed by the court of common pleas, and at such valuation Robert is to take it as a part of his share.   After which there is the following provision:

''Fifth—I furthermore order and direct that all my  estate, real, personal and mixed, be appraised and valued as aforesaid under the order and direction of said court, and that such valuation shall be taken and held as the true value and estimate of my estate as aforesaid, so to be divided as aforesaid into said two shares.''

Then follows a provision directing the sale of all the assets, by the executor, except said farm, specially devised to Robert. The following is the provision as to Mrs. McLaughlin's share:

"Seventh—I further order and direct that the amount, sum or proceeds of one share, being one-half of the said rest and residue of my estate, shall be loaned out at interest and secured by mortgage on unincumbered real estate in said county of Richland, Ohio, the interest thereof to be paid semi-annually, and that the said interest so arising therefrom be paid to my said daughter only during her natural life, and at her death the principle sum shall rest in and be paid to her children."

Certain lots in the town of Mansfield were sold by the executor for a price largely in advance of the appraisement. It is assumed by counsel for Harriet McLaughlin, that the farm devised to Robert increased as much in value as the town lots, and that the assets should have been divided between Robert and his sister prior to the sale; or that the appraised value must determine the share of each, so that the sister would receive the benefit of the excess over the appraisement, for which the town lots sold, to equal her with Robert in what it is claimed he received in the increased value of the farm at the time the lots were sold.

We think the intention of the testator is plainly expressed. While he provides for the appraisement of all the assets, only the farm is specifically devised to be taken at the appraisement, and the residue of the estate is to be sold and the proceeds divided. Not the appraisement of the assets (except said farm), but the amount realized at the sale determined the share of the daughter.

This was the construction placed upon the will by the Master, and we think this was the intention of the testator.

2. It is insisted that the amount paid out by the executor in settlement of the claim of the widow for dower and for her distributive share in the estate, was unauthorized.

It is not denied that this woman was the widow of the testator. It seems he had not lived with her for many years before his death. But there was no legal defense to her claim as the widow of Joseph Cairns, deceased. Here was an estate worth from $18,000 to $20,000, and the claim of the widow was settled by paying her $1,000 and the attorney fees, $200. We think this settlement was for the interest of the daughter, and she has no grounds for complaint as to the settlement.

3. At the time the inventory was made, in 1857, the executor was charged with $1,215.24, being a balance due the estate on Aldfelt Mill property. This sum is reduced by the Master to $374.68. It is claimed this was not justified by the evidence. The inventory was filed by the executor more than twenty-five years ago, and no question made as to its correctness. When this case was before the Master, receipts were produced by the plaintiff, dated before the death of his father, for money paid by plaintiff to or for his father, which now reduces said sum of $1,215.24 to $374.68.

The mill property was bought by Robert from his father for $4,000, and immediately after the death of his father he admits that he is indebted on said purchase in said sum of $1,215.24, and now, more than twenty-five years afterwards, this matter is opened up and the indebtedness reduced. We think it is only reasonable to presume that all the payments made by Robert to or for his father were deducted when the inventory was made.

4. Extra compensation was allowed the executor by the Master in the sum of $200.87.

This was for services in the sale of the real estate; and under ordinary circumstances the allowance was proper. The real estate was sold for over $2,000 more than the appraised value. But it was sold in 1858 to 1859, and the executor has never filed an account. Five different citations have been served upon him to file a settlement account, and although he has been receiving and paying

out large sums of money in more than twenty-five years, he has persistently refused to obey the order of the court. The probate court, on its own motion, should have removed him, if those interested in the estate neglected to take action for his removal.

Extra compensation should not have been allowed under such cicumstances.

The execution will be charged with said $1,215.24 as inventoried, and the $266.87 for the services will not be allowed. With these modifications the report of the Master will be confirmed.

Decree accordingly.

H. P. Davis, for plaintiff.

Dirlam & Leyman, for defendant Harriet McLaughlin.

Thomas McBride, for H. C. Hedges.